’Chief Justice Robertson
delivered the Opinion of the Court—
Judge Nicholas did not sit in this case.
On the 18th of October, 1830, Richard Jackson, master ofthe steam boat Cora, owned by the appellants, lying at Orleans, and about departing with freight for Louisville, signed hills of lading, acknowledging that he had received on board, from Gronriing and Wright & Co. of New Orleans, boxes of goods marked “ W. Wood, Frankfort, Ky” — one to the care of Gronning and Wright & Co., New Orleans, and the others to the care of Muir & Wiley, Louisville, “ to be delivered, in the like good order and condition, at the aforesaid port of Louisville, the dangers of the rivers only excepted, unto-, or his assigns, he or they paying freight for said goods at the rate of one cent a pound, with the privilege of reshipping on any smaller, good boat, in case the river shall le too low.” Having ascended in safety as far as Trinity, on the Ohio river, the master of the Cora, which was a boat of the largest class, ascertained that the Ohio was so low that his boat could not then proceed to Louisville, and thereupon he “reshipped” the greater portion of his cargo on the Fairy, (a steam boat of the smallest size,) and on the keel boat Betsy Baker, “ in tow to the Fairy.” The Ohio was so low that even the Fairy could not ascend with a full load, and the boxes marked l.lW. Wood” were put on boad of the keel boat Betsy Baker ; and a portion of the Cora’s cargo was left at Trinity. In ascending the Ohio river, in the night, the Betsy Baker, then “ in tow to the Fairy,” struck a snag and sunk, whereby the goods in boxes marked “ W. Wood” were damaged to the amount of five hundred dollars.
Points to be decided here.
That the masfeV of a steam boat is authorized to make contracts to carry fi-eight, is a presumption arising from the nature of his employment.
Queries — as to his liability on the bill of lad* ing.
The contracts of the master of a vessel, (within the scope of his authority,) bind the owners.
Assumpsit lies against the owners of a steam boat, in favor of the injured party, for a breach ofsuch contract. - — Trespass on the case, for damages resulting from a breach of duty.
The owner of the goods has the right of action: inform, ex delicto, or .ex contractu, as thecase maybe.
In March, 1831, the appellee brought an-action of as-sumpsit against the appellants, as the owners of the Cora; and, upon the general issue, a verdict and judgment for five hundred dollars, in damages, were rendered in his favor ; to reverse which this appeal is prosecuted.
The following points are presented for the consideration of this court: 1st. Is assumpsit maintainable ? 2nd. Can the action be maintained in the name of the owner of the goods ?• 3rd. Is there sufficient proof that the ap-pellee was the owner ? 4th. Did the circuit court err in instructing the jury, upon the motion of the appellee ?
First. As it must be presumed, from the nature of the business in which the master was employed, that he had plenary authority to- make such a contract as that which has been stated, the owners of the Cora must be bound in consequence of that contract, and according to its ten- or and legal effect. It is not now necessary to enquire whether a suit could be maintained against the master on the bill of lading, as the foundation of the action ; nor 'whether, if such a suit could be maintained, it should be covenant or case ; for were it conceded that covenant would be the proper action against the master, still, as the bill of lading is in his own name alone, it cannot be deemed a covenant by the appellants. But, as the master was acting within the scope of his authority, an undertaking by the owners of the boat, to be responsible for his acts, and according to the effect of his contracts,was implied by law; and assumpsit is an appropriate form of action for a breach of such implied contract. Trespass on the case, for a breach of duty, might be maintained ; but assumpsit for a breach of the contract, is also appropriate, (1 Wheaton’s Selwyn, 314. 2 Chitty on Plead. 117, 270 — 1 and notes.) If the form of this suit had been case ex delicto, instead of assumpsit, there could be no doubt of its appropriateness ; and we think there should be, as little doubt of the propriety of assumpsit.
Second. If the appellee was the owner of the goods, then, whatever was the form of the consignment, they should be deemed to have been received on board for him, and to have been transported at his expense and risk, and not at the expense or risk of Gronning and *148 Wright & Co. who delivered them for Mm to the masterj or of Muir and Wiley to whose care they were directed. And, as the name of the actual consignee was left blank, and was never inserted, and there was no proof, that the master was directed, or ever agreed, to deliver the boxes to any other person than the owner, or to the care of Muir and Wiley for Mm, he is the only person who appears to have been actually injured by the submersion of his goods, and should be deemed a party to the contract of affrieghtment, according to its legal effect as between Mm and the owners of the boat. He mast be deemed the consignee, because he was the owner, and the goods were directed to the care of Muir and Wiley, for him. It is not material to inquire whether Muir and Wiley might have maintained a suit, in their names, against the master or against the owners of the boat; for whether they might,, or not, the appellee, as owner of the goods, may sue the appellants, as owners of the boat, on their implied contract to fulfil the authorized undertaking of the mas-’ ter, or t'o indemnify him for the master’s delinquency. (See 1 Wheaton’s Selwyn, 312-13, 1 Chitty on Plead. 3, and Potter vs. Lansing, 1 Johnson’s Reports, 215, and the authorities therein cited.) The legal right was in him, and, therefore, the implied undertaking of the owners of the Cora inured, by legal intendment, to him and for his own benefit. That he might have maintained an action ex delicto, could not be doubted ; and we are disposed to think that he should be deemed a party to the contract implied by law, and that consequently, he may maintain the action in form ex contractu.
The owner of freight must he deemed the consignee, where none is named (the blank not filled up,) in the bilí of lading.
Bill of Exceptions shewing that the ownership of goods was not contested, but admitted, in the court below, received as sufficient evidence of the fact here.
Query--whether, when goods are shipped in a vessel of a bet-rer class (steamboat,) ‘withthe privilege,’ (as expressed in the hill of lading,) ‘ of reshipping on any smaller, good boat, in case the river shall he too low,’ they may he transferred to a vessel (keel boat) of an inferior class — two judges divide in opinion. — But-if the boat to which the goods are transferred, he propelled in a manner different from that for which she was calculated, and by which the danger and. risque is increased, the owners of the boat in which the shipment was first made, are responsible for the. loss, or damage> of the goods.
*148 Thirdly. We are authorized to infer from the bill of exceptions, that the appellee was the owner of the goods in. the boxes marked “ W. Wood.” His proprietorship seems not only to have been not contested on the trial, but to have been virtually admitted by the appellants in their bill of exceptions.
Fourthly. After proof had been introduced, shewing that goods transported in a keel boat,were liable to more risk, and subject to a much higher rate of insurance, than when carried in a steam boat, and that goods were more secure in a keel propelled^ by itself, in the ordinary mode, *149 than when attached to a steam boat; but that, for three years prior to the institution of this suit, most of the goods that had been brought from the mouth of the Ohio to Louisville, when that river was too low for navigation by the larger steam boats, had been brought in keel boats attached to steam boats of the smaller size, — the circuit court, at the instance of the appellee, instructed the jury, that the master of the Cora had no right, according to his undertaking, to reship the appellee’s goods on any other kind of boat than a steam boat; — and that even if he had such a right, the owners were responsible for the damage to the goods, if a keel boat was less liable to accident or injury when propelled in the ordinary mode than when drawn by a steam boat.
As to the propriety of the first branch of the instruction, the two judges constituting the court in this case, do not concur in opinion. Judge Underwood thinks that the words, “ any other smaller, good boat,” should be understood to mean, any smaller, good boat, of any kind fit for carrying freight up the Ohio river, and which, according to the common course of navigation in low water, was used for that purpose. He does not feel authorized to restrict the literal and abstract import of the terms employed by the parties ; and therefore, is of the opinion, tiiat a keel boat was contemplated by the parties, and is embraced in their contract.
The Chief Justice thinks that the nature of the duty to be performed, the object of the special reservation in the contract, and the subject matter to which the comparative “ smaller ” referred, should all be considered ; and that, though “ any other good boat ” may, in the abstract, embrace any boat of any kind, if in good condition, nevertheless, “any other smaller, good boat,1” when connected with the antecedent stipulation, should be interpreted as meaning a smaller steam boat. The parties had reference to the steam boat Cora, and apprehended that, ■merely because she was of the largest size, she might not be able to ascend the Ohio, and therefore agreed that a “ smaller” boat than the Cora might be substituted; or in other words, a boat differing from the Cora in size, but not in kind. He thinks that the true intent and ob *150 ject of the parties may be expressed in the following par» aphrase : '•'■this steam boat Cora, which has been selected because she '¡s a g°°d steam boat, may be too large ; if so, another, of smaller size, and which will not be too large, may be substituted that is, of course, another and smaller steam boat. This interpretation, (as he thinks,) accords with the object of the reservation, and with philological propriety ; and is also, rather fortified than weakened by the fact (proved by the appellants,) that another bill of lading, given by the same master, at the same time, for the goods of one Bowles, provided that, if the river should be too low for the Cora, his goods might be reshipped- “■ in a good keel or steam boat,’’'’ and at a higher rate of frieght. The language of the two bills is so essentially variant as to indicate a different understanding in the two cases.
But this subject will not be pursued. There is no difference of opinion in the sitting members of the court as to the last branch of the instruction. It is not materia® to enquire what other masters of steam boats may have done, when the river was too low for boats of the larger size to ascend, and when no special contract designated the rights and duties of the parties concerned. This case must be tested by the express contract. If the master of the Cora had a right, according to his contract, to substitute a keel boat, still, if the goods when shipped on the keel, were damaged in consequence of attaching the keel to a steam boat, the owners should be responsible, because such a mode of transportation was not provided for by the contract, and being (as proved,) more perilous than a transportation in a keel propelled by itself, should not be deemed to have been contemplated by the parties. It is scarcely to be doubted that, if the goods had been in a keel propelled by oars or poles — the usual and safer mode, they would not have been sunk. And we think that due care has not been observed, according to the express contract.
This decision may operate harshly. But it seems to be required by the special contract. And sound policy requires that common carriers, and especially upon the *151 large rivers, should be held strictly to their engagements, and to the performances of their legal and conventional duties.
Wherefore, it is the opinion of this court, that the judgment of the circuit court be affirmed.